IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK HAMPTON,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF CHICAGO, Former Chicago Police Detective MICHAEL DUFFIN, Former Chicago Police Detective THOMAS PTAK, and as-yet unknown City of Chicago Employees,<br><br>    Defendants. | |

## COMPLAINT

NOW COMES Plaintiff, PATRICK HAMPTON, by and through his attorneys, BREEN & PUGH and SMITH, JOHNSON & ANTHOLT, LLC, complaining of the CITY OF CHICAGO, Former Chicago Police Detective MICHAEL DUFFIN, Star #13596, Former Chicago Police Detective THOMAS PTAK, Star #6029, and as-yet unknown City of Chicago Employees (collectively, "Defendants"), and alleges as follows:

### Introduction

1. Plaintiff PATRICK HAMPTON spent twenty (20) years in prison for crimes that he did not commit. At the time of his arrest, Mr. Hampton was only eighteen (18) years old and had no criminal history of any kind.

2. As a result of Defendants' actions, Mr. Hampton was wrongfully convicted of participating in a vicious mob attack and sexual assault at the

International Amphitheatre on the Southside of Chicago in the early morning hours of December 30, 1981. After a jury trial, Hampton was acquitted of the attempted rape of one of the victims, but was convicted of another attempted rape, deviate sexual assault, aggravated battery, and robbery.

3. Lacking any physical evidence, a confession, or anything else linking Mr. Hampton to the crime, the case against him was built on evidence manufactured by Defendant Detectives Duffin and Ptak. These Defendants also withheld material exculpatory evidence of Mr. Hampton's innocence which showed that the charges against him were baseless.

4. Never losing faith that true justice would prevail, Mr. Hampton maintained his innocence for over three decades.

5. On November 29, 2001, after spending nearly twenty (20) years in prison, U.S. District Court Judge Matthew F. Kennelly granted Mr. Hampton's petition for habeas corpus relief, ordering Hampton released, based on Mr. Hampton's trial counsel rendering ineffective assistance of counsel. Judge Kennelly vacated Hampton's convictions and granted him a new trial. In 2003, the Seventh Circuit affirmed Judge Kennelly's ruling.

6. During the re-prosecution of Mr. Hampton, he again maintained his innocence and planned to go to trial to fight Defendants' false charges against him.

7. On October 5, 2011, the Cook County State's Attorney dismissed all charges against Mr. Hampton. The charges were dismissed when the State's Attorney's Office learned that the key eyewitness's identification of Mr. Hampton

was the result of tampering by Defendant Detectives, as well as other information suggesting that Defendant Detectives' "investigation" was so fraught with misconduct that it could not be relied upon.

8. In the face of other evidence establishing Mr. Hampton's innocence, previously ignored by Defendants, the criminal prosecution was finally put to a close.

## Jurisdiction and Venue

9. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's constitutional rights as secured by the United States Constitution.

10. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff asserts claims under federal law and his state law claims all arise out of the same facts as his federal claims.

11. Venue is appropriate in this Court under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to Plaintiff's claims occurred in this District, and because at least one of Defendants resides in this District.

## Parties

12. Plaintiff PATRICK HAMPTON is forty-eight (48) years old. He resides in Chicago, Illinois.

13. At all times relevant hereto, Defendants MICHAEL DUFFIN and THOMAS PTAK ("Defendant Detectives") were Chicago Police Detectives assigned to the Area 3 Detective Division. They engaged in the conduct complained of under

3

color of law and within the scope of their employment. They are sued in their individual capacities.

14. Defendant CITY OF CHICAGO is a municipality and was, during the relevant time period, the employer of Defendants DUFFIN and PTAK. Other members and/or employees of the City of Chicago, its police department, including and/or in addition to Defendants DUFFIN and PTAK, as well as some individuals who have not yet been identified, also caused and contributed to Mr. HAMPTON's injuries while acting within the scope of their employment and pursuant to the City's policies and practices.

### Background: The Attacks at the Chicago International Amphitheatre

15. On December 29, 1981, Chicago's International Amphitheatre hosted a rhythm and blues concert called "the Holiday Jam" where four bands (Chocolate Milk, Slave, Michael Henderson, and Zapp) played.

16. Shortly after midnight, while Zapp was still playing, a large group of individuals marched up the aisle toward the stage, chanting "Black Gangster Disciples" and "Third World Disciple Nation," pounding their fists together, and throwing up gang signs with their hands.

17. Three young Latino concertgoers, two women (referred to as "D.M." and "M.N.") and a man ("H.N.") were attacked by this group while they tried to get away.

4

18. The mob physically battered the three victims, stripped them of their clothing, took their wallets and jewelry, and sexually assaulted D.M. and M.N.

19. None of the attackers were detained at the Amphitheatre.

20. The victims did not provide the police with any physical descriptions of their assailants except that they were black males.

21. During the attacks, the stage lights were illuminated, but the rest of the lights in the Amphitheatre were darkened and the air was smoked-filled.

**The False Case Against Patrick Hampton**

22. Defendants Duffin and Ptak, then-Area 3 Chicago Police Detectives, were assigned to investigate the attacks at the International Amphitheatre.

23. Fourteen (14) year-old witness Keith Powell, who used to live in the same neighborhood as Mr. Hampton, called the Chicago Police Department a day and a half after the attacks at the Amphitheatre and stated that he had some information about the attacks.

24. Powell told Defendants Duffin and Ptak that he had witnessed the attacks and he was able to identify some of the attackers.

25. Although Powell told Defendants Duffin and Ptak that Mr. Hampton was one of the many people he recognized at the concert, he did not list Mr. Hampton among the attackers. Despite this fact, Duffin and Ptak authored and signed police reports that falsely claimed that Powell had identified Mr. Hampton as being one of the assailants.

26. Powell did not tell Defendants Duffin and Ptak that Mr. Hampton was a gang member. Despite this fact, Duffin and Ptak authored and signed police reports that falsely claimed that Powell had identified Mr. Hampton as a member of the Third World Black Gangster Disciples.

27. In fact, Mr. Hampton was not a gang member. Multiple other witness accounts verified that Mr. Hampton was neither among the assailants, nor a gang member.

28. Defendant Detectives also purposefully manipulated and pressured victim D.M. to falsely identify Mr. Hampton as one of her attackers.

29. One or more Defendant Detectives showed D.M. several Polaroid photographs and drew her attention to the photograph of Patrick Hampton to get her to identify him as one of her assailants despite the fact that she did not do so on her own.

30. D.M.'s false identification of Mr. Hampton at his 1982 trial and description of the sexual assault was the basis for the trial judge's finding that the assault was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" and the extended term sentence of sixty (60) years imprisonment imposed on Mr. Hampton.

31. Defendant Detectives fabricated additional evidence in an effort to bolster D.M.'s manipulated identification including that they falsely reported that she recognized Mr. Hampton based on his facial features and based on the

purported fact that Mr. Hampton had on the same clothing when she identified him as he had on at the concert.

32. In truth, subsequently uncovered, D.M. was not able to describe or recognize Patrick Hampton as one of her attackers, either by facial features, clothing, or any other characteristic. Furthermore, Mr. Hampton did not have on the same clothing that he had worn to the concert at the Amphitheatre.

**The Malicious Prosecution of Plaintiff**

33. On December 31, 1981, Defendant Detectives arrested Mr. Hampton and charged him with various criminal offenses that he did not commit.

34. Defendant Detectives signed and swore to police reports and felony complaints that falsely implicated Mr. Hampton as having participated in the attacks.

35. Throughout the prosecution and re-prosecution of Mr. Hampton, Defendants Duffin and Ptak intentionally concealed exculpatory evidence including the fabricated identification of Plaintiff. Defendants further concealed the circumstances surrounding their fabrication of false evidence against Mr. Hampton.

36. Defendant Duffin gave false and perjurious testimony in the Cook County Grand Jury in order to obtain a True Bill of Indictment against Mr. Hampton.

37. Defendant Ptak directly fabricated evidence against Mr. Hampton and withheld exculpatory evidence from the State's Attorney's Office and Mr. Hampton.

38. Defendant Ptak also testified in pretrial proceedings and at Mr. Hampton's 1982 trial, giving false and perjurious testimony against him.

39. The abusive tactics that plagued this criminal investigation continued throughout the prosecution during which Assistant State's Attorney Jack Smeeton pressured victim H.N. to give false testimony in order to bolster the prosecution's case against Mr. Hampton.

40. In 1982, Mr. Hampton was convicted of the sexual assault of D.M. on charges of deviate sexual assault, attempted rape, aggravated battery, and robbery.

41. After being wrongfully convicted, the trial judge sentenced Mr. Hampton to an extended term sentence of sixty (60) years in prison based upon the exceptionally brutal or heinous behavior that the victim described.

## Patrick Hampton's Exoneration

42. From the day that he was arrested, and throughout his imprisonment, Mr. Hampton maintained his innocence and pursued all possible avenues available to him in order to prove that he was innocent.

43. When six (6) of Mr. Hampton's co-defendants in the criminal prosecution pled guilty in exchange for extremely short sentences of time-served and probation in 1982, Mr. Hampton maintained his innocence.

44. Directly after his conviction and sentencing, Mr. Hampton filed a notice of appeal and post conviction petition, challenging his conviction.

45. After the trial, and during the post-trial proceedings, Defendants Duffin and Ptak continued to suppress the fact that they manipulated and

8

manufactured the false evidence upon which Mr. Hampton was wrongfully convicted.

46. On November 29, 2001, after spending twenty (20) years in prison, U.S. District Court Judge Matthew F. Kennelly granted Mr. Hampton's petition for habeas corpus relief, ordering Mr. Hampton released, based on Mr. Hampton's trial counsel rendering ineffective assistance of counsel. Judge Kennelly vacated Plaintiff's convictions and granted him a new trial.

47. In 2003, the Seventh Circuit Court of Appeals affirmed the District Court's order granting Plaintiff's petition and ordering his release.

48. When the Cook County State's Attorney was re-prosecuting Mr. Hampton, he once again maintained his innocence.

49. In 2011, in preparation for re-trying Patrick Hampton, the Cook County State's Attorney's Office re-interviewed the victims. These interviews revealed misconduct committed by Defendants in their campaign to frame Mr. Hampton for crimes that he did not commit.

50. The 2011 State's Attorney's investigation revealed that victim D.M's identification of Patrick Hampton was the product of pressure and manipulation by Defendant Detectives on December 31, 1981, after she repeatedly did not identify him. D.M. also told these investigators, in 2011, that all of her subsequent identifications of Mr. Hampton were based upon the photograph that Defendants had showed her in 1981.

51. In August 2011, the Cook County State's Attorney's Office dismissed the charges against Mr. Hampton shortly after turning over memoranda that described Defendants' manipulation of witnesses, fabrication of evidence, and concealment of the circumstances surrounding that false and fabricated evidence from Mr. Hampton.

## Patrick Hampton's Injuries

52. Mr. Hampton spent twenty (20) years of his life in prison for crimes he did not commit.

53. Since he was released from prison, Mr. Hampton has attempted as best he can to make a life for himself outside of the walls of a prison after being deprived of two decades of life experiences.

54. The pain, suffering, and emotional distress that Defendants caused and continue to cause to Mr. Hampton are extraordinary.

55. Mr. Hampton was taken from his family when he was just eighteen (18) years old and with absolutely no criminal history.

56. Mr. Hampton was deprived of the most basic pleasures of life and human experience.

57. Mr. Hampton was deprived of the milestones that he would have enjoyed as a free man, including holidays with his loved ones, births, funerals, the opportunity to socialize with young women, to fall in love, to have his heart broken, to marry, and to pursue a career of his choosing.

58. Mr. Hampton was stripped of his fundamental freedom of living his life

10

as an independent human being.

59. Instead, Mr. Hampton was locked in a prison cell and convicted of crimes that he did not commit through the fabrication, manipulation, and concealment of evidence by Defendants.

60. As a result of Defendants' misconduct, Mr. Hampton suffered, and continues to suffer, colossal damage, including loss of freedom, physical harm, and mental suffering.

**The City's Deliberate Indifference**

61. Throughout the 1980s and 1990s, the City of Chicago maintained a *de facto* policy, practice, and custom of failing to properly supervise, discipline, and control its officers, which was the moving force behind the violations of Mr. Hampton's constitutional rights.

62. The City allowed the use of unconstitutional investigatory practices such as the withholding of exculpatory evidence and the fabrication of evidence including witness identifications in its criminal investigations, especially in order to quickly close homicides and other high-profile crimes.

63. The unconstitutional fabrication of incriminating evidence and withholding of exculpatory evidence from Mr. Hampton in his criminal case was undertaken pursuant to, and proximately caused by, policies and practices of the Chicago Police Department.

64. Specifically, at all times relevant hereto, members of the Chicago Police Department, including but not limited to Defendants here, systematically

11

suppressed *Brady* material by intentionally secreting this discoverable information in so-called "street files."

65. As a matter of widespread custom and practice, these secretive "street files" were routinely withheld from the Cook County State's Attorney's Office and from criminal defendants, and were subsequently destroyed.

66. As a matter of widespread custom and practice, Chicago Police Detectives manipulated and fabricated evidence in a manner similar to the conduct of Defendants in this case.

## Count I – 42 U.S.C. § 1983
## Due Process

67. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

68. As described more fully above, one or more Defendants deprived Mr. Hampton of his constitutional right to a fair trial.

69. One or more Defendants deliberately withheld exculpatory evidence, as well as fabricated false reports, false statements, and other evidence, thereby misleading and misdirecting the criminal prosecution of Mr. Hampton. Absent this misconduct, the prosecution of Mr. Hampton could not and would not have been pursued.

70. Defendants' misconduct also directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him of his constitutional right to a fair trial in violation of the Due Process Clause of the Fourteenth Amendment to the United

States Constitution.

71. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

72. The misconduct described in this Count was the result of Defendant City of Chicago's deliberate indifference to the policies and widespread practices described more fully above and in that:

    a. As a matter of both policy and practice, the Chicago Police Department directly encouraged, and was thereby the moving force behind the very type of misconduct at issue here by failing to adequately supervise, discipline, and control its officers, such that its failure to do so manifests deliberate indifference;

    b. As a matter of both policy and practice, the Chicago Police Department facilitated the very type of misconduct at issue here by allowing it to continue as a matter of practice within the Department, including by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago police officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses;

    c. As a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department have abused citizens in a manner similar to that alleged by Plaintiff including but not limited to maintaining widespread practices of withholding exculpatory evidence through the use of "street files" and manipulating or fabricating evidence;

13

    d. Municipal policymakers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case.

73. As a result of these violations of Mr. Hampton's constitutional right to a fair trial, Plaintiff sustained, and continues to sustain, injuries including pain, suffering, and emotional distress, as is more fully articulated above.

### Count II – 42 U.S.C. § 1983
### Failure to Intervene

74. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

75. In the manner described above, during the constitutional violations described above, one or more Defendants (and other as-yet-unknown Defendants) stood by idle without intervening to prevent the misconduct. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

76. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

77. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City in the manner more fully described above.

78. As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain, suffering, and emotional distress, as is more fully alleged above.

14

## Count III – 42 U.S.C. § 1983
## Conspiracy to Deprive Constitutional Rights

79. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

80. After the attacks at the Chicago Amphitheatre, Defendants reached an agreement amongst themselves to frame Plaintiff for the crime, and to thereby deprive Plaintiff of his constitutional rights, described more fully in this Complaint.

81. Independently, both before and after Plaintiff's wrongful conviction, each of Defendants further conspired to deprive Plaintiff of exculpatory materials to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges as described in the various Paragraphs of this Complaint.

82. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in the conspiracy.

83. In this manner, Defendants, acting in concert with other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

84. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Chicago in the manner more fully described above.

85. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

86. As a direct and proximate result of the agreement referenced above, Plaintiff's rights were violated, and he suffered injuries including financial damages, pain, suffering, and emotional distress, as is more fully alleged above.

### Count IV – State Law Claim
### Malicious Prosecution

87. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

88. As described more fully above, Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no legitimate probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of innocence.

89. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

90. As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain, suffering, and emotional distress, as is more fully alleged above.

### Count V – State Law Claim
### Intentional Infliction of Emotional Distress

91. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

92. The acts and conduct of Defendants as set forth above were extreme and outrageous. Defendants intended to cause, or recklessly disregarded the

16

probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

93. Defendants' actions and conduct directly and proximately caused severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.

94. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

95. As a proximate result of Defendants' wrongful acts and conduct, Plaintiff suffered injuries, including pain, suffering, and emotional distress, as is more fully alleged above.

**Count VI – State Law Claim**
**Civil Conspiracy**

96. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

97. As described more fully in the preceding paragraphs, Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

98. In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity.

99. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

100. As a proximate result of Defendants' conspiracy, Plaintiff suffered

injuries, including emotional distress and anguish, as is more fully alleged above.

## Count VII – State Law Claim
## Respondeat Superior

101. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

102. In committing the acts described herein, Defendants were members or agents of the Chicago Police Department, acting at all relevant times within the scope of their employment and under color of law.

103. Defendant City of Chicago is liable as principal for all torts committed by its agents.

## Count VIII – State Law Claim
## Indemnification

104. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

105. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

106. Each Defendant is or was an employee of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, PATRICK HAMPTON, respectfully requests that this Court enter judgment in his favor and against Defendants, CITY OF CHICAGO, Former Chicago Police Detectives MICHAEL DUFFIN and THOMAS

PTAK, and as-yet unknown City of Chicago Employees, awarding compensatory damages, costs, attorneys' fees, along with punitive damages against each of the individual Defendants, as well as any other relief available under the law.

### Jury Demand

Plaintiff, PATRICK HAMPTON, hereby demands a trial by jury pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

PATRICK HAMPTON

By:

| | |
|---|---|
| /s/ Amanda Antholt | /s/ Jonathan Marshall Brayman |
| Christopher R. Smith | Thomas M. Breen |
| Robert W. Johnson | Todd S. Pugh |
| Amanda Antholt | Jonathan Marshall Brayman |
| SMITH, JOHNSON & ANTHOLT, LLC | BREEN & PUGH |
| 112 South Sangamon Street, Third Floor | 53 West Jackson Boulevard, Ste. 1460 |
| Chicago, Illinois 60607 | Chicago, Illinois 60604 |
| (312) 432-0400 | (312) 360-1001 |